# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH A. BONDS**, *individually and on behalf of all others similarly situated*, <br><br> **Plaintiff,** <br><br> v. <br><br> **GMS MINE REPAIR & MAINTENANCE, INC.,** <br><br> **Defendant.** | ) ) ) ) ) **2:13-cv-1217** ) **(Lead Action)** ) ) ) ) ) ) ) ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT (ECF No. 20) filed by Defendant GMS Mine Repair & Maintenance, Inc. ("GMS") with brief in support (ECF No. 21). Plaintiff Joseph A. Bonds, individually and on behalf of all other similarly situated, filed a response in opposition (ECF No. 22). Accordingly, the issues are ripe for disposition.

### I. Background

The following background is drawn from the Amended Complaint, and the factual allegations therein are accepted as true for purposes of this Memorandum Opinion. As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party.

GMS is a private company which services underground and surface mines by providing maintenance and contracting throughout the United States. GMS employs numerous people,

including Bonds, to provide these services at the Enlow Fork Mine ("Enlow") in East Finley, Pennsylvania, owned and operated by Consol Energy, Inc.[1]

The gravamen of the Amended Complaint is that GMS requires its Enlow employees to work before and/or after their shift without pay in violation of state and federal wage and hour laws. More specifically, Bonds avers that GMS requires its employees (1) to arrive at least fifteen or thirty minutes prior to their scheduled shift start to be transported from a remote on-site parking location to the mine's entry point at the Pleasant Grove Portal; (2) to wait at least ten to twenty-five minutes prior to commencing work at the start of each shift; (3) to wait between ten to twenty minutes at the end of each shift for transportation from the entry point back to the parking site; (4) to attend mandatory safety meetings; and (5) to submit to drug/alcohol testing—all of which are allegedly "integral and indispensable to the principal activity of providing underground maintenance and contracting." Pl.'s Am. Compl., ECF No. 17 at 2.

Plaintiff first initiated this case at Civil Action No. 13-1217 on August 23, 2012, on behalf of himself and all others similarly situated, by filing a two-count Complaint in which he alleges that GMS violated the Fair Labor Standards Act ("FLSA"), the Pennsylvania Wage Payment and Collection Act, and the Pennsylvania Minimum Wage Act. On October 11, 2013, Plaintiff filed another Complaint against GMS at Civil Action No. 13-1480 in which he avers that it violated the anti-retaliation provision of the FLSA when it changed his shift just days after his counsel "effectuated service" of the collective action Complaint so that he could no longer care for his adolescent son, resulting in a "constructive discharge" from his employment.

On October 15, 2013, GMS filed a MOTION FOR DATE CERTAIN FOR FILING OF A MOTION IN RESPONSE TO THE COMPLAINT at Civil Action No. 13-1217 in which it

---

1. Plaintiff avers that the putative class consists of approximately one-hundred and seventy (170) persons who are "dispersed throughout Pennsylvania, and elsewhere." Pl.'s Am. Compl., ECF No. 17 at 7.

noted its intention to file a motion to dismiss pursuant to Rules 12(b)(4) and 12(b)(6) and a motion for a more definite statement pursuant to Rule 12(e). GMS argued that service of process of the collective action Complaint by mail was not properly effectuated, and therefore, the time for a response had not yet begun to run. Accordingly, GMS requested that the Court enter an Order setting forth a briefing scheduling for its anticipated challenges to the sufficiency of the service of process and to the adequacy of the pleading.

By Memorandum Order dated October 16, 2013, the Court granted the motion filed by GMS and sua sponte consolidated the two actions. The Court directed GMS to file all Rule 12 motion(s) on or before November 6, 2013. Defendant filed a "Waiver of the Service of Summons" within an hour after the Court entered its Memorandum Order, an Answer on October 18, 2013 and a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim/a Rule 12(e) Motion for a More Definite Statement on November 6, 2013. In response, Plaintiff filed an Amended Complaint on November 11, 2013, which GMS once again challenges pursuant to Rule 12(b)(6) and Rule 12(e).

## II. Standard of Review

### A. Rule 12(b)(6) Motion to Dismiss[2]

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) Upon review of a motion to dismiss, the Court must accept

---

2. The Court notes that a decision by the United States Court of Appeals for the Second Circuit which considered the pleading standard in FLSA cases is the subject of a pending petition for certiorari. *See See Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85 (2d Cir. 2013), *petition for cert. filed*, 82 U.S.L.W. 3261 (U.S. Oct. 22, 2013) (No. 13-519); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("Federal courts have diverged somewhat on the question.") (citing *Butler v. DirectSat USA, LLC*, 800 F.Supp.2d 662, 667 (D. Md. 2011) (recognizing that "courts across the country have expressed differing views as to the level of factual detail necessary to plead a claim for overtime compensation under FLSA")). The United States Court of Appeals for the Third Circuit has not directly addressed this matter. Accordingly, the Court will not hold Plaintiff to a standard higher than that which is otherwise required under well-settled precedent in the Third Circuit.

all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555). This determination will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### B. Rule 12(e) Motion for a More Definite Statement

Rule 12(e) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). A Rule 12(e) motion "is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief." *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006)

### III. Discussion

GMS has filed a Rule 12(b)(6) motion to dismiss and a Rule 12(e) motion for a more definite statement, which the Court will address seriatim.

### A. Motion to Dismiss

Congress enacted the FLSA in 1938 to remedy "existing 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Sleiman v. DHL Express*, CIV.A. 09-0414, 2009 WL 1152187 (E.D. Pa. Apr. 27, 2009) (quoting 29 U.S.C. § 202(a)). Under the FLSA, "[n]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives

5

compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

The FLSA does not define the "work" or "workweek," and early caselaw defined the term broadly. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (collecting cases). For example, in *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court defined "'the statutory workweek' to 'includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace.'" *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946)). This expansive definition made compensable the "time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations." *Id.* (citing *Anderson*, 328 U.S. at 691-92). A flood of litigation followed. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) (citation omitted).

Responding to the apparent increase in litigation, Congress enacted the Portal-to-Portal Act of 1947. *See id.*; *see also Griffin v. S & B Engineers & Constructors, Ltd.*, 507 F. App'x 377, 380 (5th Cir. 2013) ("Congress amended the FLSA by enacting the Portal to Portal Act as a legislative countermand to earlier Supreme Court jurisprudence."). Among the changes to the statute, the amendment narrowed the coverage of the FLSA by exempting activities that had been treated as compensable. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) (detailing the history of the FLSA); *Andrako v. U.S. Steel Corp.*, 632 F. Supp. 2d 398, 405 (W.D. Pa. 2009) (same). Those activities included:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). *See Alvarez*, 546 U.S. at 27-28 (quoting 61 Stat. 86-87). Other than its express exceptions, the Portal-to-Portal Act did not otherwise "purport to change the[e] Court's earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" *Id.* at 28.

The Supreme Court first interpreted the term "principal activity or activities" eight years after the enactment of the Portal-to-Portal Act and its interpretive regulations. *See id.* at 29 (citation omttted). In *Steiner v. Mitchell*, the Court ultimately endorsed the conclusion that donning and doffing safety gear and showering after working with caustic and toxic materials were compensable under the FLSA, holding that "the term 'principal activity or activities' in Section 4 [of the Portal-to-Portal Act] embraces all activities which are an 'integral and indispensable part of the principal activities,' and that the activities in question fall within this category." *Id.* at 29 (quoting *Steiner*, 350 U.S. at 248).

More recently, in *IBP, Inc. v. Alvarez*, the principal question presented was whether postdonning and predoffing walking time is specifically excluded by § 4(a)(1). *See id.* at 30. A unanimous Court held that it is not. *Id.* at 37. The Supreme Court construed the statute to mean that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act." *Id.* Applying that standard, the Court rejected the argument that "even though the donning and doffing of unique protective gear are "integral and indispensable" to the employees' principal activity, this means only that donning and doffing of such gear are themselves covered by the FLSA." *Id.* at 33.

7

Waiting time can also be considered as part of the principal activity of employment. *See Bernal v. Trueblue, Inc.*, 730 F. Supp. 2d 736, 741 (W.D. Mich. 2010) (citing *Chao v. Akron Insulation & Supply, Inc.*, 184 Fed. App'x. 508, 511 (6th Cir. 2006); *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994)); *see also Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 424 (5th Cir. 2011) ("Wait time is compensable when it is part of a principal activity of the employee, but not if it is a preliminary or postliminary activity.") (citation omitted). Under the FLSA, the distinction between compensable and noncompensable waiting time depends on whether employees are "engaged to wait" rather than "waiting to be engaged." *See id.* (citing 29 C.F.R. §§ 785.14-.16; *Skidmore v. Swift*, 323 U.S. 134, 136-37 (1944); *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)). The "critical inquiry is whether the time spent waiting is primarily for the benefit of employer or the employee." *Id. See also Knapp v. Am. W. Airlines*, 207 F. App'x 896, 898 (10th Cir. 2006). Relevant here, this analysis is fact-intensive and depends on all the circumstances of the case. *See id.*; *Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078, 1090 (D. Ariz. 2010); *see also Cannon v. Vineland Hous. Auth.*, 627 F. Supp. 2d 171, 175 (D.N.J. 2008) (noting that while "'it is true that the issue of how a plaintiff spends his on-call time is one of fact . . . the determination of whether a plaintiff's activities exclude him from the overtime benefits of the FLSA is a question of law'") (quoting *Ingram v. County of Bucks*, 144 F.3d 265, 267 (3d Cir. 1998)).

In this case, GMS argues that the Amended Complaint of Plaintiff fails to state a claim because the "waiting time" for which he seeks payment constitutes noncompensable preliminary and postliminary "travel time." GMS does not, however, move to dismiss those allegations regarding the mandated safety meetings and drug/alcohol testing without compensation.

8

Plaintiff responds that the unpaid "waiting time" for which he seeks to recover is not the time spent traveling from the parking site to the mine, but rather only the idle time he and fellow co-workers are forced to expend before and after their shift(s) due to GMS' policies. Plaintiff further submits that he and the putative class members were not able to effectively use that "waiting time" for their own purposes.

Accepting the well-pleaded facts in the Amended Complaint as true, the Court finds that Plaintiff has stated a plausible claim for relief.[3] The Amended Complaint, in addition to the averments regarding noncompensable travel time, sets forth allegations that GMS required Plaintiff and his co-workers to expend time waiting for its benefit without pay. For example, Plaintiff avers that "[i]n or around February 2012, Defendant implemented a policy change requiring [its employees] to . . . arrive to work no later than fifteen minutes prior to their scheduled shift start." Pl.'s Am. Compl., ECF No. 17 at 10, ¶ 26. *See also id.* at 12, ¶ 27. A determination on the compensability of those claims will depend on whether the waiting time was for the benefit of GMS or its employees, a fact-specific inquiry which the parties will develop through discovery. Accordingly, the motion to dismiss will be denied.

**B. Motion For More Definite Statement**

In the Amended Complaint, Plaintiff repeatedly avers that GMS required its employees to "perform other tasks or engage in other activities before and/or after their paid shift" in violation of federal and state wage and hour laws. GMS submits that it is unable to respond without

---

3. Defendant highlights that Plaintiff sought recovery for "travel time" in his original Complaint and that his rebranded theory of recovery for "waiting time" is "an attempt to make an excursion around the Portal-to-Portal Act by making insubstantial changes to nomenclature. The Court notes that it is bound to consider only the most recent pleading at this time. *See W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 172 (3d Cir. 2013) ("Nor was dismissal warranted because Plaintiffs sought to 'take a contrary position to avoid dismissal.' Plaintiffs routinely amend complaints to correct factual inadequacies in response to a motion to dismiss.")/

9

further information as to which tasks and activities Plaintiff claims he performed outside of shift hours.

The Court finds that Plaintiff has provided all that is required under the Federal Rules of Civil Procedure: notice of his claims and the factual bases on which they rest. *See, e.g.*, *Taylor v. Pittsburgh Mercy Health Sys.*, Inc., CIV.A 09-377, 2009 WL 2992606, at *2 (W.D. Pa. Sept. 17, 2009) (denying a motion for a more definite statement in an FLSA case when Plaintiffs alleged that Defendants "suffered or permitted Plaintiffs to perform work before and/or after the end of their scheduled shift"; Plaintiffs were not paid for such time "as a result of [D]efendants' policies, practices and/or time recording system"; and, had Plaintiffs' hours been properly calculated, their shifts often would have resulted in premium pay rates"). Of course, the "other tasks" allegation is in addition to the more specific claims regarding the mandatory waiting time, safety meetings, and drug/alcohol testing. The catch-all allegation does not render the Amended Complaint so vague or ambiguous that GMS cannot respond even with a simple denial. *See* THE LATE CHARLES ALAN WRIGHT, ET AL., 5C FEDERAL PRACTICE AND PROCEDURE § 1376 (3d ed. 2010) (""[T]he pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b)."); c.*f. Perez v. Bardo*, CIV.A. 11-376, 2011 WL 941380, at *3 (E.D. Pa. Mar. 17, 2011) ("A lack of specificity is to be expected prior to discovery. A plaintiff's decision to include such catch-all allegations does not automatically render his complaint vulnerable to a motion to dismiss or a to motion for a more definite statement."). Accordingly, the motion for a more definite statement will be denied.

## IV. Conclusion

For the reasons hereinabove stated, the Court will deny the motion to dismiss and for more definite statement. An appropriate Order follows.

                                                                                                McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH A. BONDS, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> GMS MINE REPAIR & MAINTENANCE, INC., <br><br> Defendant. | 2:13-cv-1217 <br> (Lead Action) |

## ORDER OF COURT

AND NOW, this 8th day of January, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant's MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT (ECF No. 20) are **DENIED**. Defendant shall file a responsive pleading on or before January 15, 2014.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:  Derrek W. Cummings
     Email: dcummings@mwcfirm.com

     Avrum Levicoff
     Email: alevicoff@lsandd.net