**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH A. BONDS**, *individually and on behalf of all others similarly situated*, **Plaintiff,** **v.** **GMS MINE REPAIR & MAINTENANCE, INC.,** **Defendant.** | ) | **2:13-cv-1217** **(Lead Action)** |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court is a MOTION FOR FLSA COLLECTIVE ACTION CERTIFICATION (ECF No. 37) filed by Plaintiff Joseph A. Bonds, on behalf of himself and all others similarly situated, with brief in support (ECF No. 38). Defendant GMS Mine Repair & Maintenance, Inc. ("GMS") filed a brief in opposition (ECF No. 41); Bonds filed a reply brief (ECF No. 42). At the request of counsel, the Court heard oral argument on May 20, 2014. (ECF Nos. 43, 44). The issues have been fully briefed and well-argued on behalf of the parties. Accordingly, the motion is ripe for disposition.

## I. Background

The following background is drawn from the Court's independent review of the motion, the filings in support and opposition thereto, and the record as a whole.

### A. Factual Background

GMS is a private company that services underground and surface mines by providing maintenance and contracting throughout the United States. GMS employs numerous people,

including Bonds, to provide these services at the Enlow Fork Mine (the "Mine"), owned and operated by CONSOL Energy, Inc. in East Finley, Pennsylvania.

Bonds was employed as a crew leader at the Pleasant Grove Portal (the "Portal") of the Mine, primarily assigned to the first of three scheduled shifts: 8:00 a.m. – 4:00 p.m.; 4:00 p.m. – 12:00 a.m.; or 12:00 a.m. – 8:00 a.m. Employees for each shift were paid for eight hours.

The Mine is not of the "walk-in" variety, but instead requires shuttles known as "mantrips" to carry the workers underground. The mantrips promptly depart at the start of each shift. GMS thus expects each underground employee to report at the Portal dressed and ready to enter the Mine, or else they risk being left behind and missing a day of work. To that end, GMS employees enjoy the use of a bathhouse located next to the Portal in which they may change clothes for work, collect equipment, don protective gear, and receive their assignment.

Prior to February 2012, GMS employees who elected to drive to work would enter the Portal through a security gate and proceed to the main parking lot from which they were able to walk to the bathhouse, pick up necessary tools and equipment and begin their shift. This process supposedly took just minutes, allowing workers to arrive shortly before their scheduled start time, prepare for their shift, and commence the workday without delay. Bonds' pre-shift routine was apparently no different: he was able to arrive at the Portal at 7:55 a.m., gather a light, radio and GPS locator (a "Solaris"), and calibrate the equipment, all in time for his 8:00 a.m. start.[1]

Around February 2012, GMS allegedly implemented a number of policy changes affecting its employees' arrival time and means of transportation to the Mine. Those purported

1. The sworn statements submitted by the parties are somewhat in tension. B.J. Gales (a GMS employee) states that a typical miner's pre-shift routine includes entering the bathhouse, changing clothes, donning safety gear, picking up a light, radio and Solaris, and calibrating the GPS locater, which altogether takes approximately twenty-seven minutes. However, Bonds asserts that GMS employees may accomplish all of pre-shift activates before arriving at the Mine except for picking up equipment and calibrating the Solaris, which takes less than five minutes. GMS contends that the statements contained in Bonds' declaration are contrary to his deposition testimony in which he states that he would arrive and park his car at around "[t]wenty till, quarter till." As discussed in greater detail below, the Court does not resolve credibility issues or factual disputes at this stage of the proceeding.

changes required GMS employees to arrive fifteen minutes prior the scheduled shift start; to park at a remote on-site location approximately one-quarter mile from the Mine entrance; and to wait for and use an employer-provided van for the three to four minute transit to the worksite, which left an eleven to twelve minute gap between their arrival and start time.[2] *See* Pl.'s Am. Compl. at ¶ 26, ECF No. 17. Moreover, employees who did not arrive at the remote parking lot or the GMS trailer in conformity with the new policy were deemed late for work. At the end of the day, GMS employees were also required to wait an additional ten to twenty minutes for transport back to the remote parking site by the ten-person van. *See id.*

The February 2012 changes remained in place for about three months until GMS modified its procedure(s) to require its employees to arrive at the remote parking lot at least thirty minutes prior to their shift start. After this modification, GMS employees spent roughly twenty-six minutes waiting on-site before their work shift and ten to twenty minutes after it ended. According to Bonds, GMS did not compensate its employees for the required wait times caused by its uniform policy in violation of federal and state wage and hour laws.

Bonds further alleges that GMS would require its employees to attend formal, weekly safety meetings lasting ten-fifteen minutes during the "uncompensated wait time." Occasionally, GMS would also mandate that its employees submit to drug tests before and/or after each shift. Limited discovery indicates that at least 339 current or former GMS employees were affected by the alleged policy change(s).

---

2. There are also factual disputes as to when certain policy changes went into effect. GMS contends that it did not purchase a van until May 2012; in response, Bonds asserts that "[w]hile that may be true, the policy requiring employees to arrive at work at least fifteen minutes prior to start time was implemented some time before GMS purchased the passenger van." Decl. of Bonds at 2, ECF No. 42-1. Once again, the Court will not resolve these types of factual disputes at this juncture.

### B. Procedural History

Bonds initiated this case at Civil Action No. 13-1217 on August 23, 2012, on behalf of himself and all others similarly situated, by filing a two-count Complaint in which he alleges that GMS violated the Fair Labor Standards Act ("FLSA"), the Pennsylvania Wage Payment and Collection Act, and the Pennsylvania Minimum Wage Act. On October 11, 2013, Bonds filed another Complaint against GMS at Civil Action No. 13-1480 in which he avers that it violated the anti-retaliation provision of the FLSA when it changed his shift just days after his counsel "effectuated service" of the collective action Complaint so that he could no longer care for his adolescent son, resulting in a "constructive discharge" from his employment.

On October 15, 2013, GMS filed a "MOTION FOR DATE CERTAIN FOR FILING OF A MOTION IN RESPONSE TO THE COMPLAINT" at Civil Action No. 13-1217 in which it noted its intention to file a motion to dismiss pursuant to Rules 12(b)(4) and 12(b)(6) and a motion for a more definite statement pursuant to Rule 12(e). GMS argued that service of process of the collective action Complaint by mail was not properly effectuated, and therefore, the time for a response had not yet begun to run. Accordingly, GMS requested that the Court enter an Order setting forth a briefing scheduling for its anticipated challenges to the sufficiency of the service of process and to the adequacy of the pleading.

By Memorandum Order dated October 16, 2013, the Court granted the motion and sua sponte consolidated the two actions. The Court directed GMS to file all Rule 12 motion(s) on or before November 6, 2013. Defendant filed a "Waiver of the Service of Summons" within an hour after the Court entered its Memorandum Order, an Answer on October 18, 2013 and a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim/a Rule 12(e) Motion for a More Definite

Statement on November 6, 2013. In response, Bonds filed an Amended Complaint on November 11, 2013, which GMS once again challenged pursuant to Rule 12(b)(6) and Rule 12(e).

GMS filed its motion to dismiss on November 26, 2013, arguing that that the Amended Complaint fails to state a claim because the "waiting time" for which Bonds seeks payment constitutes noncompensable preliminary and postliminary "travel time." GMS also sought a more definite statement as to Bonds' catchall allegation that the putative collective "perform[ed] other tasks or engage in other activities before and/or after their paid shift" in violation of federal and state wage and hour laws. The Court denied the motion in its entirety on January 8, 2014. This conditional certification motion followed.

## II. Legal Standard

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). Section 16(b) of the FLSA provides employees the right to bring a private action against their employer individually and collectively on behalf of "other employees similarly situated" for specified violations of the Act. *See id.* (citing 29 U.S.C. § 216(b)). A suit brought on behalf of other employees is known as a "collective action." *Id.* (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989)).

Courts within the Third Circuit follow a two-step approach for deciding whether a suit brought under § 16(b) may move forward as a collective action. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) ("In *Symczyk*, we noted that this two-tier approach, while 'nowhere mandated . . . appears to have garnered wide acceptance.' We implicitly embraced this two-step approach, and we affirm its use here.") (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 n.5 (3d Cir. 2011)*, rev'd on other grounds*, 133 S. Ct. 1523 (2013)).

At the first stage, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 192. The level of proof required at this stage is fairly lenient: a "'modest factual showing' that the proposed recipients of opt-in notices are similarly situated." *Id.* at 192-93 (citation omitted). Under this standard, "a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 193 (citation and quotation marks omitted).

"If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (citing *Zavala*, 591 F.3d at 536). *See Symczyk*, 656 F.3d at 194 (observing that "[a]bsent from the text of the FLSA is the concept of 'class certification'" but that many courts "have used the vernacular of the Rule 23 class action for simplification and ease of understanding when discussing representative cases brought pursuant [to the FLSA]"); *see also Zavala*, 691 F.3d at 534 (noting that the "decertification" terminology was "misleading"). Indeed, this "certification" is only a "'district court's exercise of [its] discretionary power, upheld in *Hoffmann–La Roche*, to facilitate the sending of notice to potential class members,' and 'is neither necessary nor sufficient for the existence of a representative action under FLSA.'" *Symczyk*, 656 F.3d at 194 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010)).

"After discovery and with the benefit of a much thicker record than it had at the notice stage," a district court following this approach will ultimately turn to the step two of this process. *Symczyk*, 656 F.3d at 193 (citation and quotation marks omitted). "This step may be triggered by

the plaintiffs' motion for 'final certification,' by the defendants' motion for 'decertification,' or commonly, by both." *Camesi*, 729 F.3d at 243 (citing *Symczyk*, 656 F.3d at 193).

## III. Discussion

The Court is only concerned with the first stage of this regime. For the reasons that follow, the Court will grant the motion to the limited extent that Plaintiff seeks conditional certification.

### A. Conditional Certification

Bonds relies on the declarations of himself and three other opt-in plaintiffs, as well as the "detailed allegations in the [Amended] Complaint," in his attempt to show that the GMS Enlow Mine employees are similarly situated with respect to the alleged policy requiring uncompensated work. GMS characterizes the use of the declarations as overly simplistic and their content as inconsistent with the limited discovery already conducted. GMS also raises legitimate concerns as to whether the alleged "waiting time" is compensable in light of the Portal-to-Portal Act.

As a threshold matter, the Court notes that it does not consider the merits of the claim(s), decide credibility issues or resolve factual disputes at this stage of the case. *See Jeong Woo Kim v. 511 E. 5th St., LLC*, -- F. Supp. 2d --, 12 CIV. 8096 FM, 2013 WL 6283587, at *4 (S.D.N.Y. Dec. 3, 2013) (collecting cases); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368-69 (S.D.N.Y. 2007); *see also In Re: Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, MDL 2056, 2010 WL 3447783, at *21 (W.D. Pa. Aug. 13, 2010). The Court's limited role at Step One is to assess whether Plaintiff has satisfied the "modest factual showing" standard.

This showing remains a low standard of proof. *See Myers*, 624 F.3d at 555 (citing *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997); *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)). As our court of appeals recently noted, its sister circuit has described the initial step as "'determin[ing] *whether* "similarly situated" plaintiffs do in fact exist.'" *Zavala*, 691 F.3d at 536 n.4 (quoting *Myers*, 624 F.3d at 555) (alteration and emphasis in original). *See also Mott v. Driveline Retail Merch., Inc.*, -- F. Supp. 2d. --, CIV.A. 12-5244, 2014 WL 2115469, at *6 (E.D. Pa. May 21, 2014). And "because of the lenient standard at this stage, some district court[s] have found that the plaintiff's evidence [was] sufficient where declarations and deposition testimony detail common job duties and responsibilities across the named plaintiffs and the proposed class." *Mott*, 2014 WL 2115469, at * 6 (citing *In Re: Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, MDL 2056, 2010 WL 3447783 (W.D. Pa. Aug. 13, 2010); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 896 (N.D. Iowa 2008)). *See also Morrow v. Cnty. of Montgomery, Pa.*, CIV.A. 13-1032, 2014 WL 348625, at **4-5 (E.D. Pa. Jan. 31, 2014) (finding sufficient eight declarations stating that correctional officers regularly engaged in pre- and post-shift activities without compensation) (citing *Gallagher v. Lackawanna County*, 2008 WL 9375549 (M.D. Pa. May 30, 2013); *Harris v. Healthcare Services Group*, 2007 WL 2221411 (E.D. Pa. July 31, 2007)).

Much like those cases, this Court finds that Plaintiff has made a modest factual showing, satisfying his lenient burden at this stage. In support of his motion, Plaintiff submits four declarations of current or former GMS employees who attest to its uniform policy and compensation practices—the purported effect of which was uncompensated "waiting time" in violation of the FLSA. Moreover, the declarants also detail that they were employed under this across-the-board policy which allegedly applied to all GMS employees at the Mine. The Court

can hardly conclude that Bonds' motion seeking collective treatment of an off-the-clock claim is based upon "pure speculation." Simply stated, the declarations suffice to show that similarly situated plaintiffs do exist for the purpose of conditional certification.

By contrast, GMS attempts to push the Court towards applying a standard that weighs evidence, finds facts and, scrutinizes inconsistencies in the record. This Court declines to do so. GMS also asks this Court to take notice of the putative collective's arrival habits in its effort to establish that employees routinely arrived at the Portal more than one-half hour before their scheduled shift start, and therefore, the policy did not affect all of its employees similarly. But, once again, this invitation is premature. *C.f. Zavala*, 691 at 537 ("As the Second Circuit observed, the task on final certification is determining 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'") (quoting *Myers*, 624 F.3d at 555). Accordingly, the Court will grant the motion for conditional certification.

**B. Scope of the Putative Collective**

Having determined that conditional certification is appropriate, the Court now turns to the parties' arguments regarding the scope of the putative collective.

GMS contends that, even if Bonds meets his burden at this stage, the February 2012 to present timeframe he proposes is too expansive on both ends of the spectrum. First, GMS submits that the earliest GMS employees were subject to the policy is June 1, 2012 based on the purchase date of the van. Second, GMS suggests a cutoff date of April 14, 2014 because CONSOL recently completed an expansion of the main parking lot in which GMS employees may once again park as of April 15, 2014. Thus, as GMS concludes, its employees who elect to drive themselves to work are no longer restricted by the shuttle schedule and may arrive at the

Portal whenever they deem appropriate, provided that they must be ready to enter the Mine promptly when their shift commences.

For his part, Bonds contends that GMS misconstrues the policy changes that he has asserted and which give rise to his claim. Bonds argues that the timing of the policy change is a factual issue best left unresolved until a later time and that it will only impact the calculation of damages. Bonds further disputes that he has limited his claim in any way or made it contingent upon when GMS purchased the van.

The Court will conditionally certify the putative collective as proposed by Bonds: "All current and former non-exempt employees of Defendant, GMS Mine Repair & Maintenance, Inc., who were assigned to work at the Pleasant Grove Portal (entry point) of the Enlow Fork Mine (the "Enlow Fork Mine Employees") from February 1, 2012 to the present." Should discovery reveal that the policy change did not go into effect until June 2012 and/or that it reverted back in mid-April 2014, the Court will limit the scope of final certification. The Court finds this approach preferable to potentially foreclosing a putative member's right to opt-in to this collective action.

**C. Form and Method of Notice**

As part of his motion, Bonds requests the exchange of identifying information regarding the putative plaintiffs within fourteen days, the approval of his proposed form, the distribution of notice and a timeframe for opting-in to this action. The Court will deny these aspects of the motion without prejudice.

The parties are directed to meet and confer in good faith on or before Wednesday, July 16, 2014 to devise a fair notice and opt-in procedure that is reasonable and agreeable to the parties and the Court; however, if the parties cannot agree on a proposed notice and consent

form, counsel shall each submit a proposed notice and consent form on or before Monday, July 21, 2014, apprising the Court in writing of the specific reason(s) why they were unable to submit a joint proposal. The Court encourages the parties to resolve any disputes with regard to the content of the notice and/or consent form in order to expedite this phase of the litigation and to prevent delay.

To be sure, the Court will neither order nor permit the dissemination or conspicuous posting of Plaintiff's proposed notice and consent until it is approved. *See, e.g.*, *Vargas v. Gen. Nutrition Centers, Inc.*, 2:10-CV-867, 2012 WL 5336166, at **12-14 (W.D. Pa. Oct. 26, 2012) (ECF No. 121). The Court also will not order GMS to produce the Social Security Number(s) for any member(s) of the putative collective, absent some showing or joint agreement. *See, e.g.*, *Bland v. Calfrac Well Servs. Corp.*, 2:12-CV-01407, 2013 WL 4054594, at *1 (W.D. Pa. Aug. 12, 2013) (ECF No. 43) ("Plaintiffs will provide Calfrac with a list of any putative opt-ins whose Notices are returned as undeliverable and that Calfrac will provide the last four digits of their social security number (conditional on the parties entering into a protective order) so that they may run a skip trace.").

## IV. Conclusion

For the reasons hereinabove stated, the Court will grant in part and deny in part the motion for conditional certification. An appropriate order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH A. BONDS**, *individually and on behalf of all others similarly situated*, | ) | |
| **Plaintiff,** | ) | **2:13-cv-1217 (Lead Action)** |
| **v.** | ) | |
| **GMS MINE REPAIR & MAINTENANCE, INC.,** | ) | |
| **Defendant.** | ) | |

**ORDER OF COURT**

AND NOW, this 1st day of July, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the PLAINTIFFS' MOTION FOR FLSA COLLECTIVE ACTION CERTIFICATION is **GRANTED IN PART AND DENIED IN PART**, and a collective action is conditionally certified, comprised of: "All current and former non-exempt employees of Defendant, GMS Mine Repair & Maintenance, Inc., who were assigned to work at the Pleasant Grove Portal (entry point) of the Enlow Fork Mine (the "Enlow Fork Mine Employees") from February 1, 2012 to the present."

**IT IS FURTHER ORDERED** that, on or before Wednesday, July 16, 2014, Defendant shall produce to opposing counsel a list, in electronic format, of all present and former Enlow Fork Mine Employees as above-referenced for said relevant time period, which shall include their name, date of employment, and employee ID number. The parties shall not disseminate any notice or communication relative to this litigation to any person set forth on such list without further Order of Court.

**IT IS FURTHER ORDERED** that the parties shall meet and confer in good faith on or before Wednesday, July 16, 2014 and submit a joint proposed notice and consent form on or before Wednesday, July 30, 2014 to be sent to all putative plaintiffs if thereafter approved by the Court; however, if the parties cannot agree on a joint proposed notice and consent form, they shall submit their separate proposals and a detailed letter brief apprising the Court in writing of the specific reason(s) why they were unable to do so, on or before Monday, July 21, 2014.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: Derrek W. Cummings
Email: dcummings@mwcfirm.com
Larry A. Weisberg
Email: lweisberg@mwcfirm.com

Avrum Levicoff
Email: alevicoff@lsandd.net

(via CM/ECF)